348 So.2d 1026 (1977)
Henry Floyd ROME
v.
STATE of Mississippi.
No. 49588.
Supreme Court of Mississippi.
August 10, 1977.
James M. Hall, Wiggins, for appellant.
A.F. Summer, Atty. Gen., by Henry T. Wingate, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and BROOM, JJ.
BROOM, Justice, for the Court.
Burglary conviction resulted from Rome's trial in the Circuit Court of Stone County, *1027 which court sentenced him to six years imprisonment. Probable cause for Rome's arrest, and admissibility of the fruits of the search of his person and car are the chief issues before us. We reverse.
During the night of November 11, 1975, the Stone County Courthouse was burglarized and almost $2,000 stolen. Not knowing of the burglary, police officer Bodie (designated also as Bodine in the record) was on routine foot patrol in the courthouse vicinity after midnight when a noise came to his attention. It sounded like the tearing of metal and was coming from the vacant Montroy house south of Mr. Parson's office. His suspicions aroused by the noise, Bodie spotted two men (one on the Montroy porch and the other nearby bending over something on the ground), at which time he made known his identity and ordered them to halt. One of the subjects escaped by running east toward the street; the other ran toward (as if to attack) Bodie, who took him into custody and radioed Officer Griffin for assistance without giving any details about any crime. The arrestee identified himself as Paul Vincent from New Orleans, but his driver's license identified him as Robert Paul Hebert. Police officers took Vincent to the police station where a search of his person revealed a seven inch knife and approximately $1200 cash plus other money labeled "Bi-Centennial Tags $108.00."
After Police Chief Simpson arrived at the police station a short time later, Officer Griffin returned to the area of the Montroy house from where he observed a 1970 or 1971 Chevrolet car traveling slowly in an easterly direction on Border Avenue at a point 75 to 100 yards from where Vincent was captured. Following the car, Griffin noted that it had a Louisiana license tag, which caused him to think it was connected with the earlier events. Griffin "blue-lighted" and stopped the car after it "speeded up a little," although he observed no law violation or erratic behavior on the part of the car or its driver. Then he took into custody the driver (whose driver's license showed his name as one "Cooper") later identified as Henry Floyd Rome. Officer Griffin's testimony was that under these circumstances he might have arrested any person who drove down the street where Rome was arrested at fifteen miles per hour, even if the car had a Mississippi tag.
After Griffin's arrest of Rome, subsequently discovered evidence (which went to the jury) was obtained from his person and car connecting him with the courthouse burglary. Evidence taken from a search of Rome's person included a card from Golden Slipper Steak House bearing telephone number 524-0513. The arrest of Rome made possible and led to a search of his car (several hours later, about 10:00 a.m.) by the law officers armed with a search warrant, from which search there was obtained incriminating evidence. Rome argues that his arrest by Officer Griffin was without probable cause and was illegal, and that, therefore, reversible error occurred when the jury was allowed to receive the critical items of evidence taken from his person and car. The argument was originally made by motion to suppress, which the trial judge overruled.
WAS THE ARREST OF ROME BASED ON PROBABLE CAUSE, MAKING ADMISSIBLE INTO EVIDENCE THE FRUITS OF THE SEARCH OF HIS PERSON? The Fourth Amendment to the United States Constitution and § 23 of the Mississippi Constitution of 1890, in almost identical language, secure citizens from unreasonable searches and seizures. Mississippi Code Annotated § 99-3-7 (1972) authorizes warrantless arrests "when a felony has been committed" and the investigative officer or person has reasonable ground to suspect and believe the person proposed to be arrested committed the felony. Probable cause means more than bare suspicion, but does not necessarily require sufficient evidence to support a criminal conviction. Powe v. State, 235 So.2d 920 (Miss. 1970).
Powe has similarities to our present case and it, too, turned on the question of probable cause for a warrantless arrest. In Powe the burglar alarm at the Coca-Cola Bottling Company in Hattiesburg was activated. *1028 This drew police officers patrolling in the vicinity to the building where they found that an outer door had been prized open. While reconnoitering the area, the officers arrested one suspect found on the premises. The officers were informed that a second person was seen there described as: approximately six feet tall, of medium size, and having dark complexion and dark hair. By further investigation, the officers in Powe found parked on a nearby street (bearing a Louisiana tag) an automobile which they ascertained belonged to none of the residents in the area. After putting the automobile under surveillance, the officers observed a man running away from the wooded area near the plant toward the automobile. They immediately arrested him and we upheld the legality of the arrest, but in Powe the officers had a description of the second suspect in question, which is not true here as to Rome. Another case in which we dealt with probable cause is Holt v. State, Miss., 348 So.2d 434, decided July 27, 1977. There, in finding probable cause, we noted that an investigative law officer (1) knew a felony had been committed, (2) had sufficient reason to believe that the perpetrators of the crime were in a certain residence, and (3) had information as to how the robbers were dressed, plus other details connecting the suspects with a known robbery. Accordingly, we held that the officers had a right to enter the residence to arrest the robbers and make a search, but the present case is skimpy on probable cause when compared to Holt.
Hall v. State, 288 So.2d 850 (Miss. 1974), held that in determining whether a search is reasonable, we must review the arresting officer's action in the light of practical everyday events and be mindful of the "unpredictable behavior of the criminal element in society." Viewing the actions of Officer Griffin in such a manner, we cannot find that his arrest of Rome was based upon probable cause and therefore legal. At the time Griffin arrested Rome, Griffin was aware of the events related to him by Bodie, including the arrest of Vincent. Griffin also knew that Bodie's suspicions had been aroused by the strange noise emanating from the area of the nearby abandoned house where Bodie saw two men, one of whom had escaped. Other facts known to Griffin were that from Vincent's (not Rome's) person there had been removed a large sum of cash, including a bundle marked "Bi-Centennial Tags $108.00." From these facts one might fairly conclude that Griffin had sufficient trustworthy evidence to suspect that some offense had been committed by Vincent, but on such facts could he conclude with reasonable cause that Rome had committed a felony? We think not.
From the evidence it appears that, when he arrested Rome, Griffin surmised that the car and its then unidentified driver were possibly on an unlawful mission. The officer's hunch or suspicion proved to be accurate, but as this Court has previously said, an unlawful search, though made in honest belief of right, remains unlawful and its fruits forbidden. McNeely v. State, 277 So.2d 435 (Miss. 1973). Of critical significance here is the fact that the record is devoid of any proof that Griffin, at the time he arrested Rome, had any reasonable ground to "suspect and believe" that Rome had committed the "felony" as required by Mississippi Code Annotated § 99-3-7, supra. According to Griffin, he did not know that the courthouse had been burglarized when he took Rome to the police station and there told Rome that the burglary had occurred. Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947). Based upon the totality of the circumstances of this case, we cannot hold that there was sufficient evidence at the time Griffin arrested Rome to even infer that this particular person was the offender who escaped when the other was arrested. Neither can we hold that Griffin had sufficient evidence to believe that Rome had committed a felony. Therefore, we must hold that Rome's warrantless arrest was illegal and the evidence taken from his person was inadmissible. To uphold the arrest would be to lay down the unacceptable rule that law officers may arrest any stranger deemed by them to be suspect of having committed an unknown *1029 crime, and then hunt a crime to be charged against such a citizen. Green and Green v. State, 348 So.2d 428, decided July 27, 1977, presented an arrest following an "investigative" stop after which the officers looked inside the car they had stopped and saw a "safe" in plain view. Here, there was no "investigative" stop  Rome was simply arrested and taken into custody.
WERE ITEMS TAKEN FROM THE CHEVROLET CAR DRIVEN BY ROME ADMISSIBLE? This evidence which went to the jury included drills, drill bits, and a receipt (found on the dashboard) dated October 29, 1975, from Mon Arc Welding in Gretna, Louisiana, for some tubing, oxygen and a cutting tip for an acetylene torch. Having already determined that Rome's arrest was illegal, we must decide if the search of the car several hours later was purged from the taint of the illegal arrest by means of the search warrant. In considering this proposition, we note the following significant facts: (1) The car would not have been impounded and made available for its search except for the initial illegal arrest; (2) Rome did not freely and voluntarily surrender the car or its contents; (3) the search was not based upon information independent of the illegal search (in this regard we point out that the statement of underlying facts and circumstances refers to Rome's arrest).
Silverthorne Lbr. Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1970), held that facts improperly gained by the prosecution do not thus "become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong can not be used by it in the way proposed." (251 U.S. at 392, 40 S.Ct. at 183). Here it cannot be held that obtaining items of evidence taken from the search of Rome's car was not accomplished by exploitation of the illegality of his arrest which rendered the car available for its subsequent search by warrant. Well established in our jurisprudence is the rule of law that the legality of a search and seizure must be based on preceding steps which themselves are legal. Davidson v. State, 240 So.2d 463 (Miss. 1970). An earlier case, Canning v. State, 226 So.2d 747 (Miss. 1969), held that a search and seizure which is illegal at its inception is not rendered legal by "what it brings to light." See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Baylor v. State, 246 So.2d 516 (Miss. 1971).
Accordingly, we must hold that placing before the jury the evidence taken from Rome's person and car constituted reversible error. Having made this holding, we do not reach the question of whether the search warrant was illegal for (1) having been issued by one not a "neutral and detached" magistrate, or (2) failure to particularly specify the items to be seized. As Griffith, J., stated in Cochran v. State, 191 Miss. 273, 2 So.2d 822 (1941), "our duty is to maintain that convictions shall be within, and not without the law" even though in some instances a guilty party may have his conviction set aside.
There is no merit to Rome's argument that ownership of the courthouse was not adequately proven. However, because of the illegal arrest of Rome and the improper admission into evidence of the items taken from his person and car, the case must be reversed and remanded for retrial should the state be able to make out a case against Rome by other evidence.
REVERSED AND REMANDED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.