# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-01978-SCT

*ANGELA DENISE JOHNSON a/k/a ANGELA*
*JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2010 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/13/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     A Neshoba County jury convicted Angela Johnson of one count of possession of methamphetamine, one count of possession of precursor chemicals, and one count of false pretense. The Court of Appeals affirmed Johnson's convictions, and this Court granted certiorari to resolve the question of whether admission into evidence of two search warrants and an underlying facts-and-circumstances affidavit which included hearsay statements attributed to a confidential informant constituted reversible error. Because we find error, we

reverse the judgments of the trial court and the Court of Appeals and remand the case to the Circuit Court of Neshoba County for a new trial.

## FACTS[1] AND PROCEDURAL HISTORY

On January 9, 2010, Neshoba County Deputy Sheriff Ralph Sciple received information from a confidential informant that Johnson was in possession of methamphetamine and precursor chemicals in her home in Philadelphia, Mississippi. Officer Sciple was also told that individuals were making false identification cards in order to buy precursor chemicals. Based on this information, two search warrants were issued. One search warrant targeted the methamphetamine and precursor chemicals on the premises, and a second search warrant targeted the computers and equipment used to make forgeries.

On January 10, 2010, at 10:40 p.m., the search warrants were executed. The adults present when the search warrant was executed were Johnson, Calvin Johnson, and Kenneth Brian Stevens. They were taken to the living room and given a *Miranda* warning. Johnson stated that she understood the warning.

Inside of the home, officers found two laptop computers. On one computer, a Dell, the screen was open. The officers observed a picture of a Nebraska driver's license showing an individual who Officer Sciple "knew didn't live in Nebraska." The picture was of Alicia Wells, a Neshoba County resident. The other computer, a Toshiba, was closed and connected to a charger. Officer Sciple questioned Johnson regarding the computers. She stated the Dell computer was hers, and the Toshiba computer belonged to Stevens. Officer Sciple also found a document on Johnson's computer detailing how to make false identification cards. In addition to the computers, eleven identification cards were found in a purse in the residence. Nine of the identification cards purported to show a photograph of Johnson. One was Johnson's actual driver's license, two of them were fake Nebraska driver's licenses, and the rest were fake Mississippi identification cards or driver's licenses.

During the search, officers found a box located in the computer room containing an Instant Ice compress, pseudoephedrine pills, and lithium batteries. A bottle of drain cleaner was discovered in the master bathroom of the house. A can of Coleman camp fuel was retrieved from the laundry room of the residence. Finally, a bag of fertilizer was found outside the front door of the home. A forensic scientist with the Mississippi Crime Lab testified at

---

[1] Facts are taken *verbatim* from the opinion of the Court of Appeals.

trial and stated the items collected all contained chemicals in commonly found precursors used in the manufacturing of methamphetamine.

During the search, the officers also found two empty ziplock bags and a third ziplock bag containing a "crystal[-]like substance." The forensic scientist testified regarding the testing of the ziplock bags at the crime lab. According to the scientist, one ziplock bag contained methamphetamine, and the two empty ziplock bags tested positive for trace amounts of methamphetamine.

Johnson, Calvin, and Stevens were all arrested on January 10, 2010, the night the warrant was executed. On January 12, 2010, Officer Sciple interviewed Johnson. Before any questioning, he advised Johnson of her *Miranda* rights, and she signed a waiver. She then made certain confessions to Officer Sciple, which he condensed into written statements signed by Johnson. In the first statement, Johnson acknowledged that she was in possession of methamphetamine. In the second statement, she admitted that she had bought Claritin-D and that Stevens had bought pseudoephedrine. They planned to take the pills out of the county for someone else to make methamphetamine. Johnson claimed she only intended to use the medicine and never planned to make the methamphetamine herself. In her final statement, she stated that she had used a false identification card with a Social Security number that was not her own.

On May 4, 2010, the grand jury indicted Johnson for Count I, possession of methamphetamine; Count II, possession of precursor chemicals; and Count III, false pretense. The trial began on November 11, 2010.

*Johnson v. State*, 2013 WL 791831, *2 (Miss. Ct. App. Mar. 5, 2013).

¶2. The search warrants and accompanying documents were introduced by the State and admitted as substantive evidence at trial. Each included the following statement by the issuing justice court judge: "WHEREAS RALPH SCIPLE KNOWN TO ME TO BE A CREDIBLE PERSON, HAS THIS DAY MADE COMPLAINT ON OATH BEFORE ME AS FOLLOWS. . . . This Court, having examined and considered the Affidavit, and also having heard all considered evidence in support thereof from the affiant named therein does find that probable cause for the issuance of a Search Warrant does exist."

3

¶3.    Attached to each search warrant was an underlying facts-and-circumstances

affidavit, which included the *curriculum vitae* of Officer Sciple:

> Affiant, Ralph Sciple has been in law enforcement since 1980. Sciple has
> served as Constable in Kemper County for 12 years, served with the
> DeKalb Police Department for 8 years, several of those years as Chief of
> Police and served as Sheriff of Kemper County for 1 ½ years. Sciple is
> presently serving with the Neshoba County Sheriff's Department where he
> has been for the past 10 plus years and has been an Investigator for over 9
> of those years. Sciple is a certified law enforcement officer and a graduate
> of the Mississippi Law Enforcement Training Academy in Pearl,
> Mississippi and has attended numerous in service training on the subject of
> criminal investigations. Sciple has effected numerous felony arrests and
> investigated numerous cases. Sciple has applied for and received many
> search warrants in his career.

¶4.    The underlying facts-and-circumstances affidavit attached to the search warrant for

methamphetamine and precursor materials included the following:

> Inv. Sciple has received information for the past several days from a
> confidential informant that Inv. Sciple knows to be a credible person and
> has given creditable information in the past that has led to arrest and
> convictions that Methamphetamine was being made at 10132 county road
> 369 at the residence of Angela D. Johnson.  On this day 01-09-10 the same
> informant gave the following information that he/she saw lithium batteries,
> fertilizer, camp fuel, drain cleaner and plastic tubing at the residence of
> 10132 county road 369.  The informant stated there was always
> Methamphetamine at the residence.  On 01-09-10 Inv. Sciple began
> preparing an affidavit for Search Warrant, with supportive Underlying Facts
> and Circumstances, this being within the past 24 hours.  It is based on these
> facts that your affiant respectfully request a search warrant be issued for this
> residence, 10132 Road 369 Philadelphia, MS 39350 to include all persons,
> outbuildings and vehicles.

¶5.    Similarly, the underlying facts-and-circumstances affidavit attached to the search

warrant for fake IDs and fake ID manufacturing equipment stated:

> Inv. Sciple has received information for the past several days from a
> confidential informant that Inv. Sciple knows to be a credible person and
> has given credible information in the past that has led to arrest and

4

convictions that Fake ID's were being made at 10132 county road 369 Philadelphia, MS 39350 at the residence of Angela D. Johnson. On this day 01-09-10 the same informant gave the following information that he/she saw Fake ID's made and other names on fake ID's at the residence of 10132 county road 369 Philadelphia, MS 39350. On 01-09-10 Inv. Sciple began preparing an affidavit for Search Warrant, with supportive Underlying Facts and Circumstances, this being within the past 24 hours. It is based on these facts that your affiant respectfully request a search warrant be issued for this residence, 10132 Road 369 Philadelphia, MS 39350 to include all persons, outbuildings and vehicles.

¶6. At trial, Johnson moved to suppress the search warrants on grounds of staleness and unreliability. Johnson objected repeatedly on the same grounds, and she renewed her previous objections in a motion for directed verdict. The trial court denied the motion to suppress, overruled the objections, and denied the motion for directed verdict. On direct appeal, Johnson challenged the search warrants, arguing that their admission at trial:

(1) allowed the informant to testify via hearsay that methamphetamine was being manufactured at the residence, (2) violated her right to confront the witness, (3) constituted "other crime evidence" inadmissible under Mississippi Rule of Evidence 404(b), and (4) permitted Officer Sciple to vouch for the credibility of the informant.[2]

*Johnson*, 2013 WL 791831, at *3. The Court of Appeals held that the issues were procedurally barred because they were not raised before the trial court. *Johnson*, 2013 WL 791831, at *6. *See Walker v. State*, 913 So. 2d 198, 217 (Miss. 2005) ("Failure to raise an issue at trial bars consideration on an appellate level."); *Montana v. State*, 822

---

[2] Johnson also argued on direct appeal that "the jury instruction for Count II did not advise the jury that it must be unanimous on the identity of the precursor materials," that "the trial court erred by failing to suppress her statements," and that "her conviction and sentence should be reversed based on cumulative error." *Johnson*, 2013 WL 791831, at *2. We find Johnson's challenge to the admission of the search warrants, the sole issue raised in her petition for writ of certiorari, to be dispositive.

So. 2d 954, 959 (Miss. 2002) ("asserting grounds for an objection on appeal that differs from the ground given for the objection at the trial level does not properly preserve the objection for appellate review"). Johnson raises the same four issues regarding the admission of the search warrants in her petition for writ of certiorari.

## DISCUSSION

¶7.     It is almost unknown to the jurisprudence of this State for a search warrant to be admitted at trial as substantive evidence against a criminal defendant. Indeed, in the instances in which the Court has considered this question, it has deemed reversal to have been warranted. In *Sisk v. State*, 290 So. 2d 608, 610-11 (Miss. 1974), this Court held that "[t]he validity of the search warrant, the legality of the search and the admissibility of the evidence obtained as a result of the search were matters of law to be determined by the trial court" and were "not questions to be determined by the jury." *Id.* at 610. *See also* **Hayes v. State**, 348 So. 2d 432, 433 (Miss. 1977); **Holt v. State**, 348 So. 2d 434, 438-39 (Miss. 1977).

¶8.     As in *Sisk*, the receipt into evidence of the search warrants in the case before us "allowed the state to get into evidence hearsay statements which deprived [Johnson] of the right of confrontation and cross examination." *Sisk*, 290 So. 2d at 610-11. However, as the Court of Appeals recognized, this assignment of error was not properly raised on appeal, since Johnson objected only on the grounds of staleness and reliability at trial. *Johnson*, 2013 WL 791831, at *6. While Johnson did not properly object at trial to the admission of the search warrants, the doctrine of plain error allows this Court to consider:

> obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right. For the plain-error doctrine to apply, there must have been an error that resulted in a manifest

6

miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Burdette v. State*, 110 So. 3d 296, 303 (Miss. 2013) (quoting *Conners v. State*, 92 So. 3d 676, 682 (Miss. 2012)). Here, Johnson asserts violation of a "fundamental, substantive right," namely, the "right . . . to be confronted with the witnesses against [her]." *Corbin v. State*, 74 So. 3d 333, 337-38 (Miss. 2011) ("A violation of the Confrontation Clause is a violation of a 'fundamental, substantive right' which seriously affects the 'fairness, integrity or public reputation of judicial proceedings.'") (quoting *Smith v. State*, 986 So. 2d 290, 294 (Miss. 2008); *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508, 518 (1993)). "This Court reviews de novo a Confrontation Clause objection." *Smith*, 986 So. 2d at 296.

¶9.     Both the Sixth Amendment to the Constitution of the United States and Article 3, Section 26, of the Constitution of the State of Mississippi provide a criminal defendant the right "to be confronted by the witnesses against him." According to this Court and the United States Supreme Court, the Confrontation Clause:

> (1) insures that the witness will give his statements under oath–thus impressing him with the seriousness of the matter and guarding against the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility.

*Id.* (quoting *Lee v. Ill.*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986)).

¶10.    "In *Crawford v. Washington*, the United States Supreme Court held that testimonial statements of witnesses absent from trial can be admitted, in accordance with common law, *only* where the declarant is unavailable *and* the defendant had a prior opportunity to cross-

7

examine." *Smith*, 986 So. 2d at 296 (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004) (emphasis in original). The Supreme Court distinguished between testimonial and nontestimonial statements, and this Court adopted the distinction: "[n]ontestimonial hearsay is subject to evidentiary rules concerning reliability," while "testimonial hearsay must be filtered through the Confrontation Clause." *Smith*, 986 So. 2d at 296-97 (citing *Crawford*, 541 U.S. at 68).

¶11.    While the Supreme Court declined to provide a clear definition of "testimonial statements," the Court stated that the term extends "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. The Court provided further guidance on the testimonial/nontestimonial dichotomy in *Davis v. Washington*, holding that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224 (2006). The *Davis* Court further defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 824 (quoting *Crawford*, 541 U.S. at 51).

¶12.    As Officer Sciple attests in his underlying facts-and-circumstances affidavits, the confidential informant informed him that "Methamphetamine was being made at 10132 county road 369 at the residence of Angela Johnson" and that "Fake ID's were being made

8

at 10132 county road 369 Philadelphia, MS 39350 at the residence of Angela D. Johnson." Both statements constitute testimonial hearsay, since Officer Sciple's primary purpose in obtaining them was "to establish or prove past events potentially relevant to later criminal prosecution." The search warrant materials in effect allowed the unseen, unknown, and unsworn confidential informant to testify against Johnson, without any opportunity for cross examination by the accused. We therefore find that admission of such statements at trial offends the Confrontation Clauses of our federal and state constitutions. U.S. Const. amend. VI; Miss. Const. art 3, § 26.

¶13.   Nevertheless, the finding of a Confrontation Clause violation does not complete  this Court's inquiry. "Having determined that a defendant's right of confrontation was violated, we do not recognize plain error unless 'the error resulted in a manifest miscarriage of justice.'" *Burdette*, 110 So. 3d at 296 (quoting *Conners*, 92 So. 3d at 684). Where constitutional errors do "not prejudice the outcome of the trial," there can be "no manifest miscarriage of justice." *Burdette*, 110 So. 3d at 305. When this Court has addressed the admission into evidence of search warrants and related documents at trial, it has reacted with strong disapproval. *See Sisk*, 290 So. 2d at 608, 610-11 (Where the testimony of the officer "together with the affidavit and search warrant" were admitted into evidence, this Court unanimously reversed, holding that: "[t]he affidavit and search warrant, if the search were made by authority of a search warrant, must be produced and made a part of the record, but *the documents are not for the consideration of the jury*.") (emphasis added). In the present case, the documents should have been marked for identification but not admitted into evidence.

¶14.    Likewise, where a search warrant including an underlying-facts-and-circumstances affidavit went to the jury, this Court emphatically held that "[t]he introduction of the hearsay evidence, the underlying facts and circumstances, in the affidavit was *gross error*" and "served no procedural or justifiable purpose. . . ." **Hayes**, 348 So. 2d at 433 (emphasis added). The Court reversed and remanded, holding that the "*likely effect*" of the admission of the search warrant and underlying-facts-and-circumstances affidavit, "whether intended or not, was to prejudice the jury by violating the appellant's constitutional right of being confronted by the witnesses testifying against him." **Id.** (emphasis added). On the same day that **Hayes** was decided, this Court also rendered its decision in **Holt**, 348 So. 2d at 434. In **Holt**, the Court held that admission of the search warrant, including a facts-and-circumstances affidavit, was reversible error because "the objectionable evidence linked the defendant to a known criminal, indicating guilt by association." **Id.** at 439. As in **Sisk**, the Court held in **Holt** that "[i]t is the judge's responsibility to determine the admissibility of the fruits of the search not the jury." **Id.**

¶15.    Confrontation Clause violations occurred in **Sisk**, **Hayes**, and **Holt**, as in the present case. In those cases we reversed, not only because of the violation of the defendants' confrontation rights, but also because search warrants, including affidavits attesting to specific underlying facts and circumstances not appropriate for the consideration of the jury, contained other, highly prejudicial information. In **Sisk**, for instance, the Court articulated that, in addition to the Confrontation Clause problems, "the affidavit contained statements

10

of another crime for which appellant had not been tried,[3] the conviction of another crime[,] and a reputation as a known pusher of drugs." ***Sisk***, 290 So. 2d at 611. This Court opined in those cases that the purpose of the search warrant documents was for the *judge* to ascertain admissibility of the fruits of the search, not evidence for the *jury* to consider in its determination of the guilt *vel non* of the accused. *See **id.*** ("We think that this clearly demonstrates the reason why the legality of the search is and should be a matter of law to be determined by the court and not one for the jury to decide.").

¶16.   In the present case, not only did Officer Sciple's tribute to the confidential informant go to the jury; but also, the attached affidavit of the underlying facts and circumstances strongly suggested to the jury that the defendant should be convicted in this instance because the "creditable information" of the confidential informant previously "led to arrest and convictions that Methamphetamine was being made . . . at the residence of Angela D. Johnson." Further, much of the underlying-facts-and-circumstances affidavit of Officer Sciple bolstered his own credibility by detailing his extensive experience and training as a peace officer.  In fact, the first page of each of the three search warrants issued by the justice court judge declares that "Ralph Sciple [is] known to me to be a credible person." Therefore, through the search warrants, the issuing judge vouched for the credibility of Officer Sciple, the witness, who provided key testimony on behalf of the State at trial, thus infusing inadmissible character evidence into the State's case. Moreover, there was no way for the defendant to cross examine the absent justice court judge. Considering the totality of the

---

[3] The affidavit in the present case proclaimed: "there was *always* Methamphetamine at the residence." (Emphasis added.)

11

content of the search warrants, and the accompanying facts-and-circumstances affidavits attached thereto, the trial judge improperly admitted those documents as substantive evidence against Johnson.

¶17. The dissent posits harmless error, finding no "manifest miscarriage of justice as the properly admitted evidence against Johnson, namely her three statements along with the physical evidence found at her home, was overwhelming." Had the prejudicial material come before the jury in the form of testimonial or tangible evidence, its admission possibly could have been harmless. In *Burdette*, for instance, the testimony of a detective regarding "purported statements of unidentified" employees of a gun manufacturer and the detective's statements concerning the content of a crime lab report constituted hearsay and violated the Confrontation Clause. *Burdette*, 110 So. 3d at 303. Because "the parties at trial were in agreement that Burdette shot Smith at point-blank range," this Court held that the constitutional error was harmless, as the evidence against Burdette was overwhelming. *Id.* at 304. Unlike *Burdette*, where testimonial evidence admitted in violation only of the Confrontation Clause was considered, in this case, the jury saw and considered as substantive evidence the search warrants for Johnson's home, which contained *multiple pieces* of information highly prejudicial to her, most of which was otherwise inadmissible.[4]

---

[4] If, as the dissent states, the "properly admitted evidence against Johnson . . . was overwhelming," this Court can divine no reason for the State to have offered the search warrants and an accompanying facts-and-circumstances affidavit as evidence. Surely the prosecutor would not have sought admission of this material in the absence of a belief that it would strengthen the State's case.

¶18.   Similarly, in ***Conners***, this Court held that the admission of a ballistics report and a toxicology report violated the Confrontation Clause but constituted mere harmless error, since that "evidence was largely cumulative of other evidence before the jury," and thus, "the error in admitting the reports in violation of Conners's right to confront the analysts was harmless beyond a reasonable doubt." ***Conners***, 92 So. 3d 684-85. But, again, as in ***Burdette***, the issue was whether hearsay reports admitted in violation only of the Confrontation Clause amounted to plain error, not whether, as here, admission of search warrant documents containing *multiple pieces* of highly prejudicial information amounted to plain error. Regardless of the strength of the State's properly admitted evidence, we cannot say beyond a reasonable doubt that admission of such documents did not prejudice Johnson.

## CONCLUSION

¶19.   After indictment, search warrant documents bear upon the legal issues of admissibility and relevancy, which are for judicial determination. These are in nowise jury issues. Jurors are concerned with the evidence itself, e.g., the fruits of a search, and they are to decide its weight and sufficiency. We can never know what tipped the balance for this jury. But it is clear that the trial court committed plain error which resulted in a manifest miscarriage of justice by allowing search warrants and accompanying facts-and-circumstances affidavits, containing information highly prejudicial to Johnson's case, to be considered by the jurors as they deliberated. The documents thus admitted could be read and reread by the jurors. They were clothed with official status and bore the seal of a court. A local judge for whom some of the jurors may have voted gave a strong, written endorsement of Officer Sciple, the

13

State's principal witness. Who among us is wise enough to know that these powerful and partisan papers had no effect on the jury's verdict? We therefore reverse and remand to the Circuit Court of Neshoba County for a new trial consistent with this decision.

¶20. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KING AND COLEMAN, JJ., CONCUR. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ.**

**LAMAR, JUSTICE, DISSENTING:**

¶21. I agree with the majority that it was error for the State to introduce into evidence two search warrants and their affidavits containing the underlying facts and circumstances. I also agree that the defendant "did not properly object at trial to the admission of the search warrants" and therefore, if error is found, it must be considered plain error. However, "[this Court do]es not recognize plain error unless the error resulted in a manifest miscarriage of justice," which occurs only if the error prejudiced the disposition of the case.[5] Prejudice is often lacking when the weight of the evidence against a defendant is overwhelming.[6] A thorough review of the record in this case leads me to conclude that the error here did not result in a manifest miscarriage of justice, as the properly admitted evidence against Johnson,

---

[5] ***Burette v. State***, 110 So. 3d 296, 304-05 (quoting ***Conners v. State***, 92 So. 3d 676, 684 (Miss. 2012)) (internal quotations omitted).

[6] ***Burdette***, 110 So. 3d at 304-05. *See also* ***Smith v. State***, 986 So. 2d 290, 300-01 (Miss. 2008), and ***Clark v. State,*** 891 So. 2d 136, 141 (Miss. 2004).

namely her three statements along with the physical evidence found at her home, was overwhelming.

*Count One: Possession of Methamphetamine*

¶22.    The State was required to prove that Johnson knowingly or intentionally possessed less than .1 gram of methamphetamine.  *See* Miss. Code Ann. § 41-29-139(c)(1)(A) (Rev. 2013).  In her statement that was placed into evidence, Johnson admitted that "the meth that was found in my purse was mine.  No one else knew it was there.  The purse it was found in was a [sic] alligator skin purse."  Jamie Johnson, a forensic scientist with the Mississippi Crime Laboratory, confirmed that the substance found in Johnson's purse was methamphetamine.

*Count Two: Possession of Precursors*

¶23.    The State was required to prove that

> [Johnson] knowingly or intentionally purchase[d], possess[ed], transfer[red], manufacture[d], attempt[ed] to manufacture or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount, knowing, or under circumstances where one reasonably should know, that the listed precursor chemical or drug will be used to unlawfully manufacture a controlled substance.

Miss. Code Ann. § 41-29-313(1)(a)(ii) (Rev. 2013).  Johnson admitted that "[o]n Sunday [the] 10th of January 2010[,] I bought Claritin D at Wal-Mart, and Brian Stephens[7] bought a twenty-count box of pseudoephedrine at Wal-Mart" and that she "was going to take the

---

[7]In the record, Kenneth Brian Stevens is referred to as Brian Stephens as well as Kenneth Stevens.

15

pills out of the county for someone to make meth for me to use. I was not going to cook the meth but I was going to use it." Claritin D contains pseudoephedrine, which is a listed precursor chemical for methamphetamine. Miss. Code Ann. § 41-29-313(1)(b)(iv) (Rev. 2013). Officer Ralph Sciple testified that the pills Johnson confessed to possessing were found in a box with an Instant Ice compress and lithium batteries. Jamie Johnson testified that lithium and ammonium nitrate, a chemical in the Instant Ice compress, both are listed precursor chemicals for methamphetamine. Miss. Code Ann. § 41-29-313(1)(b)(iii, vii) (Rev. 2013).

*Count Three: Fake IDs*

¶24.    The State had to prove that Johnson made or caused to be made "any false statement or representation as to h[er] or another person's or entity's identity, social security account number, credit card number, debit card number or other identifying information for the purpose of fraudulently obtaining or with the intent to obtain goods, services or any thing of value." Miss. Code Ann. § 97-19-85 (Rev. 2006). Johnson admitted that, "on Sunday[,] the 10th of January[,] I went to Wal-mart and I used an ID that had Angela Carlton SSN 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 and bought a 10 part pack of Clarion-D [sic]. The SSN on the ID was not my SSN."

¶25.    Johnson admitted every element of all three charges, and her statements were admitted at trial. These statements, coupled with the forensic and physical evidence, are overwhelming evidence of Johnson's guilt. Therefore, I decline to recognize the admission of the search warrants as plain error, because their admission did not cause a manifest miscarriage of justice. For these reasons, I respectfully dissent.

16

**RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**