# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-DP-00583-SCT

*EDWIN HART TURNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/15/97 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN M. COLETTE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LESLIE S. LEE |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 2/4/99 |
| MOTION FOR REHEARING FILED: | 2/17/99 |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The case at bar is an appeal from the Circuit Court of Forrest County, Mississippi, after a change of venue from Carroll County, Mississippi, First Judicial District. Turner was indicted by the Grand Jury of Carroll County, Mississippi, First Judicial District, on May 20, 1996, in a two count indictment charging him in Count I with the December 13, 1995, capital murder of Eddie Brooks during the commission of an armed robbery in violation of Miss. Code Ann. § 97-3-19(2)(e) and in Count II with the December 13, 1995, capital murder of Everett Curry during the commission of an armed robbery in violation of Miss. Code Ann. § 97-3-19(2)(e). Turner was tried, and the jury, after deliberation, found him guilty of capital murder on both Counts I and II on February 13, 1997. The jury then heard evidence in aggravation and mitigation of sentence. After deliberation, on February 14, 1997, the jury returned the following verdicts in proper form sentencing Turner to death on both Counts I and II.

¶2. The Count I verdict states:

We, the Jury, unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder charged in Count I of the indictment:

1. That the defendant actually killed Eddie Brooks.

2. That the defendant attempted to kill Eddie Brooks.

3. That the defendant intended that the killing of Eddie Brooks take place.

4. That the defendant contemplated that lethal force would be employed.

Next, we the jury, unanimously find that the aggravating circumstances of:

The capital offense was committed for pecuniary gain during the course of an armed robbery.

exists beyond a reasonable doubt and is sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we further find unanimously that the defendant should suffer death as to Count I of the indictment.

/s/Earl J. McGehee

Foreman of the Jury

¶3. The Count II verdict states:

We, the Jury, unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder charged in Count II of the indictment:

1. That the defendant actually killed Everett Curry.

2 That the defendant attempted to kill Everett Curry.

3. That the defendant intended that the killing of Everett Curry take place.

4. That the defendant contemplated that lethal force would be employed.

Next, we the jury, unanimously find that the aggravating circumstances of:

The capital offense was committed for pecuniary gain during the course of an armed robbery.

exists beyond a reasonable doubt and is sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we further find unanimously that the defendant should suffer death as to Count II of the indictment.

/s/Earl J. McGehee

Foreman of the Jury

¶4. After the sentence of death was imposed by the jury, the trial court set an execution date of March 28, 1997. Turner's motion for new trial was denied on March 25, 1997.[1] Turner perfected his appeal on April 24, 1997. Turner presently awaits the outcome of this appeal in the Maximum Security Unit of the State

Penitentiary at Parchman, Mississippi.

¶5. Turner has raised thirteen (13) assignments of error for review by this Court:

**I. THE ARREST OF TURNER WAS ILLEGAL PURSUANT TO MISS. CODE ANN. § 99-3-7 AND SUBSEQUENT SEARCH AND SEIZURE VIOLATED THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THEIR MISSISSIPPI CONSTITUTIONAL COUNTERPARTS.**

**II. COUPLING A VAGUE INDICTMENT WHICH DID NOT FAIRLY APPRISE THE DEFENDANT WITH NOTICE OF WHICH UNDERLYING FELONY WOULD BE PURSUED ALONG WITH A DUPLICITOUS JURY INSTRUCTION VIOLATED THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.**

**III. THE LOWER COURT ERRED IN DENYING TURNER'S PROPOSED LESSER INCLUDED OFFENSE INSTRUCTION.**

**IV. THE PROSECUTOR ENGAGED IN WHOLLY IMPROPER CROSS-EXAMINATION OF SENTENCING PHASE WITNESSES SOLELY FOR THE PURPOSE OF INJECTING PREJUDICE TO INFLAME THE JURY.**

**V. THE TRIAL COURT ERRED IN EXCLUDING RELEVANT MITIGATION EVIDENCE IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.**

**VI. THE LOWER COURT ERRED IN LIMITING CONSIDERATION OF MENTAL CAPACITY MITIGATING CIRCUMSTANCE TO "SUBSTANTIAL IMPAIRMENT."**

**VII. THE INSTRUCTIONS TO THE JURY AND THE INTRODUCTION OF THE GUILT PHASE EVIDENCE AT THE SENTENCING PHASE VIOLATED STATE LAW AND THE FEDERAL AND STATE CONSTITUTIONS.**

**VIII. THE LOWER COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THERE IS A PRESUMPTION THAT NO AGGRAVATING CIRCUMSTANCES EXIST.**

**IX. THE LOWER COURT ERRED IN INSTRUCTING THE JURY AT SENTENCING IT COULD CONSIDER "THE DETAILED CIRCUMSTANCES OF THE OFFENSE."**

**X. THE LOWER COURT VIOLATED THE EIGHTH AMENDMENT AND STATE LAW BY INSTRUCTING THE JURY TO DISREGARD SYMPATHY IN REACHING ITS SENTENCING DECISION.**

**XI. THE EIGHTH AMENDMENT AND STATE LAW WERE VIOLATED WHEN THE LOWER COURT ALLOWED IN ESSENCE BOTH THE ROBBERY AND PECUNIARY GAIN AGGRAVATING CIRCUMSTANCES TO BE CONSIDERED BY THE JURY.**

**XII. THE STATE'S MISCONDUCT IN THE CLOSING ARGUMENT WARRANTS REVERSAL OF THE DEATH SENTENCE.**

**XIII. THE STATE IMPROPERLY ARGUED STATUTORY AGGRAVATING CIRCUMSTANCE WHEN IT HAD PREVIOUSLY ON THE RECORD ELECTED TO ONLY PROCEED WITH THE PECUNIARY GAIN AGGRAVATOR AND HAD NOT SOUGHT TO PROCEED WITH THE HEINOUS, ATROCIOUS AND CRUEL AGGRAVATOR IN THE SENTENCING INSTRUCTION.**

## STATEMENT OF THE FACTS

¶6. On the night of December 12, 1995, Appellant Edwin Hart Turner (hereinafter Turner) and Paul Murrell Stewart (hereinafter Stewart) had been drinking beer and smoking marijuana while driving around Leflore and Carroll Counties in Stewart's automobile. Around midnight the vehicle veered off the gravel road and became stuck in a ditch. Turner and Stewart walked to the nearby home of Doyle Carpenter, a friend of Turner's. Carpenter carried the pair to Turner's home when the trio were unable to free the automobile from the ditch. Once back at Turner's house, Turner and Stewart decided to rob some place. The crimes at issue in the present case occurred at two separate convenience stores approximately four miles apart on U.S. Highway 82 in Carroll County, Mississippi.

¶7. The crime spree began at Mims Turkey Village Truck Stop. Turner and Stewart went into the store wearing masks and carrying high-powered rifles. Turner used a 6mm rifle, while Stewart carried a .243 rifle with a scope attached. Turner and Stewart walked into the store and then Turner shot Eddie Brooks, the store clerk, in the chest. Eddie Brooks slumped behind the counter and fell to the floor.

¶8. Turner and Stewart went behind the counter to the cash register but could not get it to open. The two men became angry when they could not open the cash register. Stewart shot the cash register, but it still would not open. Turner, in a rage, struck the butt of his rifle on the cash register. Turner then shot at the cash register to no avail. Turner then became enraged. Turner placed the barrel of his gun inches from Eddie Brooks' head and pulled the trigger, killing Mr. Brooks.

¶9. Unsuccessful in their attempt to get any money, the two men immediately drove to Mims One Stop. Everett Curry was standing next to a gas pump outside. There were several people inside. Stewart went inside the store to rob it while Turner made Everett Curry get on the ground by threatening him with his 6mm rifle. As Curry was pleading for his life, Turner shot him in the head, killing him. Meanwhile, Stewart was ordering the clerk to fill a paper bag with money.

¶10. After killing Everett Curry, Turner then ran into the store and ordered everyone to get down. Turner then pointed a gun at a man in the store. Stewart urged Turner not to kill anyone else since they already had the money that they came for. Turner and Stewart then left the store and returned to Turner's house.

¶11. Turner and Stewart put the guns inside Turner's house. Stewart left his white hockey mask on the back seat of Turner's car. Stewart then counted the money (about $400.) which they then split, while Turner prepared shrimp and cinnamon rolls which the two then ate. Turner and Stewart awoke later that morning to several law enforcement officers knocking on the door. The officers discovered two high-powered rifles in Turner's house. Turner and Stewart were then arrested and brought to Carroll County Sheriff C. D. Whitfield. Stewart gave a full confession outlining the above events. The Sheriff then got a search warrant for Turner's house.

¶12. Turner was tried and found guilty of two counts of capital murder while in the commission of armed

robbery. The jury then imposed the death penalty for both counts of capital murder. This appeal followed.

## DISCUSSION OF THE ISSUES

**I. THE ARREST OF TURNER WAS ILLEGAL PURSUANT TO MISS. CODE ANN. § 99-3-7 AND SUBSEQUENT SEARCH AND SEIZURE VIOLATED THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THEIR MISSISSIPPI CONSTITUTIONAL COUNTERPARTS.**

**A. WARRANTLESS ARREST**

¶13. Turner argues forcefully that the information possessed by the law enforcement officers at the time that they went to Turner's home, handcuffed both Turner and Stewart, and drove them away in police cars from the Turner home was insufficient to establish the requisite probable cause needed to arrest Turner without a warrant. Turner argues that the law enforcement officers knew the following:

1. They knew first of all that two persons were dead and that they had met their end by use of a deadly weapon. There was however nothing connected to the dead bodies that signaled Hart Turner's involvement.

2. They recovered from the scenes hulls and casings presumably ejected from the deadly weapons. There was nothing unique about the physical evidence that signaled Hart Turner's involvement.

3. They knew at the first murder scene that no eyewitnesses observed the killing or the perpetrators, nor gave a description of the offender's vehicle. Nothing signaled Hart Turner's involvement.

4. They knew at the second murder scene that no eyewitness could identify the perpetrators as their faces were concealed with masks. No one recognized the masks [as] belong[ing] to Hart Turner and no one got a view of the getaway vehicle license plate which again did not signal Hart Turner's involvement. In fact the best anyone ever came up with was a gray or silver car and Turner owned a dark blue car.

5. They discovered a wallet, purportedly of the victim of the second homicide, yet no fingerprint analysis was done to manifest Hart Turner's involvement.

6. No fingerprint evidence linked Turner to either of the homicides.

7. No one identified Hart Turner's voice as having been behind the mask. The perpetrators did not leave any of their own blood evidence to connect them nor had they left behind any other physical evidence demonstrating they had been there, eg. footprints, tire tracks.

8. No one recognized the rifles used in the killings.

9. At this time, roughly 2:15a.m. they had obviously not had the benefit of Paul Stewart's admissions and confessions, nor any other confidential informant information alerting them to Hart Turner.

10.They knew that the perpetrators were white males and one was taller than the other.

¶14. Conversely, the State argues that the law enforcement officers had a great deal of evidence linking

Turner to the two capital murders. In the present case, the officers knew that two murders a few miles apart on Highway 82 had taken place. Two eyewitnesses remembered that two white males of average height, one taller than the other, had perpetrated these crimes. The night manager saw one white male with a gun holding up a patron of his store who was outside pumping gas, and another white male enter the store with a gun wearing a white hockey mask. What the white male standing outside the gas station at the second crime scene was (or was not) wearing is the subject of much contention and debate in the trial record and for that reason will not be assumed by this Court.

¶15. Both sides cite *Rome v. State*, 348 So. 2d 1026 (Miss. 1977), for support of their position as to this issue. In *Rome*, the facts were as follows: The Stone County Courthouse was burglarized at night and almost $2000.~~00~~ was stolen. *Id.* at 1027. A policeman on foot patrol in the area heard a noise coming from the courthouse area and spotted two men at which time he made his presence known and ordered them to halt. *Id.* The two men split up - one was apprehended and the other got away. *Id.* Officer Griffin was called in for assistance by the arresting officer. *Id.*

¶16. Officer Griffin, after assisting the arresting officer, went in his patrol car back to the same area of the courthouse and began patrolling it. *Id.* At this time, Officer Griffin did not know that the courthouse had been burglarized, only that two men had been spotted in the area acting suspiciously and one had run when the police officer ordered them to halt and had gotten away. *Id.*

¶17. This Court found that,

> [T]he record is devoid of any proof that Officer Griffin, at the time he arrested Rome, had any reasonable ground to 'suspect and believe' that Rome had committed the 'felony' as required by Miss. Code Ann. § 99-3-7. []. According to Griffin, he did not know that the courthouse had been burglarized when he took Rome to the police station . . . . Based upon the totality of the circumstances of this case, we cannot hold that Griffin had sufficient evidence to believe that Rome had committed a felony . . . . To uphold the arrest would lay down the unacceptable rule that law officers may arrest any stranger deemed by them to be suspect of having committed an unknown crime, and then hunt a crime to be charged against such a citizen.

*Id.* at 1028-29.

¶18. While *Rome* is good law and is very instructive, the facts in the present case do not support a similar finding of reversal as was the decision in *Rome.* This Court in *Rome* stated the correct test which we are to apply to arrests without a warrant. *Id.* at 1027. This Court stated, "[p]robable cause means more than bare suspicion, but does not necessarily require sufficient evidence to support a criminal conviction." (quoting *Powe v. State*, 235 So. 2d 920 (Miss. 1970)).

¶19. Here, two white males in a Toyota with a Georgia plate, tag number FGZ-818, had evaded Leflore County authorities the night before the early morning killings. Leflore County Sheriff Ricky Banks obtained a John Doe arrest warrant for the two white males. High powered rifle hull casings were found at the scene of the crime. Doyle Carpenter told authorities that he gave Turner and another white male a ride to Turner's home when the Toyota with a Georgia plate, tag number FGZ-818 they were riding in, became stuck in the ditch earlier in the evening. Sheriff Whitfield remembered Hart Turner as a white male who had a history of violence.

¶20. The Toyota stuck in the ditch had a Pillow Academy bumper sticker on it which was traced to Stewart, a young white male. There was a trail of footprints leading from the abandoned vehicle to a house up the gravel road that belonged to Doyle Carpenter. Doyle Carpenter described the two men to the law enforcement officers and told them that he had carried them to Turner's residence that night when the three of them could not dislodge the car from the ditch. Sheriff Whitfield asked his deputies to drive to Turner's residence and tell the two men he wanted to talk to them. When Deputy R.W. Miller and Milton Smith arrived at Turner's home, they looked in the window of Turner's Honda Accord. They observed a white hockey mask (consistent with the one described by the witnesses at the second crime scene) lying on the back seat of the car and noticed a live rifle cartridge lying on the car's floorboard.

¶21. The officers knocked on the door at Turner's house. Turner opened the door at which time boxes of rifle shells were visible lying on the floor inside the house. Turner then asked the law enforcement officers inside. Once inside, the officers asked Turner whether anyone else was in the house to which Turner replied that his buddy was in the back bedroom. Turner started back towards that bedroom but was stopped by the law officers who then went back to the bedroom themselves. They found Stewart in the bed and observed two rifles lying on two couches in that bedroom.

¶22. Then both Turner and Stewart were handcuffed, wearing nothing but their underwear. Turner and Stewart were Mirandized according to the arresting officer, and Turner refused to talk. The question is were they under arrest at this time when they were handcuffed and led away to the police patrol cars?

¶23. This Court in *Riddles v. State*, 471 So. 2d 1234 (Miss. 1985), outlined the test to be used here. If the potential arrestee "could not have believed under such circumstances that he was free to leave," then the arrestee is in fact under arrest. Given the facts of the present case, Turner and Stewart could not reasonably have believed that they were free to leave. Therefore, they were under arrest when they were handcuffed at Turner's house by the law enforcement officers and carried away in police cars.

¶24. The issue then becomes, was this an illegal arrest since the officers had no arrest warrant at this time? Mississippi Code Ann. § 99-3-7(1) (Supp. 1998), regulates when arrests may be made without a warrant:

> An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; **or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it;** or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
>
> . . . .

(emphasis added).

¶25. According to Stewart's testimony at the trial, the police officers told them that morning that they were under arrest and then sat them down in the living room and began asking them questions after being handcuffed. Stewart testified the police wanted them to sign a piece of paper (presumably a waiver of rights form). Turner and Stewart refused to sign it. Importantly, the record does not reflect that either Turner or

Stewart requested to speak with an attorney. The officers told Turner and Stewart at that time that they suspected them of having been involved in the tragic deaths of the two victims in this case, Curry and Brooks.

¶26. The officers in the present case complied with the statute, Miss. Code Ann. § 99-3-7, in arresting Turner without an arrest warrant. First, a felony had been committed. Two men had been slain in the process of two separate armed robberies. Secondly, a large body of evidence was known at the time of the arrest, including: 1) an abandoned vehicle which fit the description down to the exact license tag number of Stewart's Toyota which had been driven recklessly in Leflore County the night before the early morning killings which had resulted in two John Doe arrest warrants for two young white males; 2) a trail of footprints from that abandoned vehicle which led to Doyle Carpenter's house; 3) Doyle Carpenter having told the officers that he had carried Turner and a friend of Turner's to Turner's house around midnight December 12, 1995; 4) upon the officers arriving at the Turner house, they noticed a white hockey mask lying on the back seat of Turner's vehicle as well as a live rifle round lying on the floorboard in plain view - viewed through the window of the car; 5) upon knocking on the door and Turner opening it, a box of rifle shells were seen in plain view; 6) Turner invited the officers into the house and upon entering the house more shells were visible in plain view lying on the floor; 7) when asked if Turner was alone, Turner replied that his buddy was in the back bedroom, and upon going to the back bedroom to find this person, Stewart was found in the bed and two rifles were seen in plain view lying on two couches in the bedroom.

¶27. All of this evidence, coupled with the knowledge that two murders had occurred in the early morning hours of that same day with a high-powered rifle, perpetrated by two young white males (one wearing a white hockey mask) amounted to "reasonable ground[s] to suspect and believe the person proposed to be arrested to have committed it [the felony] . . . ." Miss. Code Ann. § 99-3-7(1) (Supp. 1998). Therefore, Turner's arrest without a warrant was legal. This result is properly reached even disregarding the much contested evidence concerning whether Turner was wearing a white towel around his neck during the murders in the early morning hours of December 13, 1995, as testified to by some witnesses.

¶28. Furthermore, even had the arrest been found improper (which it has not), that error would have been harmless since no evidence flowed from that arrest which was crucial to the conviction.

## B. SEARCH WARRANT

¶29. Having determined that the arrests were legal, the next issue is whether the seizure of the evidence by means of a search warrant later that same day was proper. Turner argues that since the police had no probable cause to arrest him that morning, it follows that any evidence derived as a result of the illegal arrest is tainted. At the time that the officers restrained Turner's and Stewart's movement in the house they were under arrest. *Riddles v. State*, 471 So. 2d 1234 (Miss. 1985). At that moment, the officers would have been justified in seizing the evidence which was in plain view. However, out of an abundance of caution they did not seize or even touch the items of evidence in the house.

¶30. Turner's argument fails due in large part to the fact that his arrest was legal. Therefore, the evidence discovered as a result of that arrest was not tainted. Furthermore, by the time the affidavit for a search warrant was presented to the magistrate more evidence had been obtained, not the least of which was the confession of Stewart, Turner's partner in crime.

¶31. This Court stated in *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996), that "[a] trial judge enjoys a

great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." In **Branch v. State**, 347 So.2d 957, 958 (Miss. 1977), this Court stated, "the burden is on the appellant to demonstrate some reversible error to this Court. It is the appellant's duty to see that all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth, are included in the record, and he may not complain of his own failures in that regard."

¶32. The trial judge, in regard to Turner's Motion to Suppress Evidence, concluded:

[T]he Sheriff went to the, went and prepared an affidavit and search warrant together with the underlying facts and circumstances. He has testified here today. The Court has examined the underlying facts and circumstances and finds no material contradiction between the facts, underlying facts and circumstances in the affidavit, accompanying the affidavit, or with what Sheriff Whitfield testified to today.

Although the Court finds it's not necessarily material as to whether or not those statements were true, the question is were the facts presented to the Magistrate sufficient for her to have probable cause to issue the warrant. I find the material facts are true though, and I find that the underlying facts and circumstances presented to the Magistrate are more than adequate to give her probable cause to issue the warrant. And therefore, the Motion to Suppress is overruled.

¶33. The trial judge allowed Turner's counsel ample opportunity to cross-examine the State's witnesses about the events surrounding the discovery of the rifles and the clothing. Turner failed to establish any fault with the law enforcement officers' work. For these reasons, the arrest of Turner was legal pursuant to Miss. Code Ann. § 99-3-7 (Supp. 1998), and the subsequent search and seizure pursuant to a search did not violate the Fourth and Fourteenth Amendments to the United States Constitution and their Mississippi Constitutional counterparts.

### II. COUPLING A VAGUE INDICTMENT WHICH DID NOT FAIRLY APPRISE THE DEFENDANT WITH NOTICE OF WHICH UNDERLYING FELONY WOULD BE PURSUED ALONG WITH A DUPLICITOUS JURY INSTRUCTION VIOLATED THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

¶34. The indictment in the present case is as follows:

The Grand Jurors of the State of Mississippi, taken from the body of good and lawful citizens of said [Carroll] County, elected, summoned, empaneled, sworn and charged to inquire in and for the county aforesaid, at the term aforesaid of the Court aforesaid, in the name and by the authority of the State of Mississippi, upon their oath present that

Count I

Edwin Hart Turner

late of the First Judicial District of Carroll County, Mississippi, on or about the 13th day of December, 1995, in the county, judicial district, and state aforesaid, and within the jurisdiction of this Court, while acting in concert with and/or aiding, abetting, or assisting one Paul M. Stewart, did

unlawfully, wilfully, feloniously, and either with or without the deliberate design to effect death, kill and murder Eddie Brooks, a human being, by shooting him with a rifle, while engaged in the commission of the felony crime of armed robbery in violation of Miss. Code Ann. Section 97-3-79 and Section 97-3-19(2)(e) (as amended) and constituting a series of related acts or transactions or a common scheme or plan, and against the peace and dignity of the State of Mississippi.

Count II

Edwin Hart Turner

late of the First Judicial District of Carroll County, Mississippi, on or about the 13th day of December, 1995, in the county, judicial district, and state aforesaid, and within the jurisdiction of this Court, while acting in concert with and/or aiding, abetting, or assisting one Paul M. Stewart, did unlawfully, wilfully, feloniously, and either with or without the deliberate design to effect death, kill and murder Everett Curry, a human being, by shooting him with a rifle, while engaged in the commission of the felony crime of armed robbery in violation of Miss. Code Ann. Section 97-3-79 and Section 97-3-19(2)(e) (as amended) and constituting a series of related acts or transactions or a common scheme or plan, and against the peace and dignity of the State of Mississippi.

¶35. Turner's argument on this issue centers on the premise that on Count II, he is unaware (based upon the indictment) whether the death of Everett Curry was effected during the armed robbery of Everett Curry or of the gas station where Curry was outside pumping gas. At trial, Turner contends the State introduced evidence of two separate armed robberies: one of Curry and one of the gas station. Turner argues that since the proof at trial went to two separate armed robberies at the scene where Everett Curry was killed, and since the indictment does not apprise Turner of which alleged armed robbery is the basis of the underlying felony, it cannot be said with any certainty that he had fair notice with which to prepare his defense. For support of this argument, Turner relies heavily upon ***State v. Berryhill***, 703 So. 2d 250 (Miss. 1997).

¶36. ***Berryhill*** is readily distinguishable from the facts in the instant case. In ***Berryhill***, Anthony Berryhill was indicted for capital murder while engaged in the commission of a burglary. ***Id.*** at 252. In ***Berryhill***, this Court held that "capital murder indictments that are predicated upon the underlying felony of burglary must assert with specificity the felony that comprises the burglary." ***Id.*** at 258. However, this Court in ***Berryhill*** also distinguished capital murder cases predicated upon burglary from all other capital cases:

> Simply put, the level of notice that would reasonably enable a defendant to defend himself against a capital murder charge that is predicated upon burglary must, to be fair, include notice of the crime comprising the burglary. **Burglary is unlike robbery and all other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime.** While it is true that the general rule finds indictments that track the language of the criminal statute to be sufficient, ***Ward v. State***, 479 So.2d 713, 715 (Miss. 1985)(charging aggravated assault), the fairer rule in case of capital murder arising out of burglary is that which we intimated in ***Moore***, and would require the indictment to name the crime underlying the burglary in addition to tracking the capital murder statute . . . .

***Id.*** at 256. (emphasis added).

¶37. This Court in ***Berryhill*** very clearly addressed Turner's issue here. Only in capital murder cases

predicated upon the felony of burglary will this Court require a more detailed indictment: to the extent of noticing the defendant with what felony was intended in the burglary. This is a capital case with the predicate felony being armed robbery. The indictment certainly put Turner on notice of this fact and was, therefore, adequate.

¶38. A more analogous case to the present one is ***Mackbee v. State***, 575 So. 2d 16 (Miss. 1990). In that case,

> Mackbee's capital murder indictment allge[d] that the murder of Montgomery was committed while Mackbee was 'engaged in the commission of the crime of robbery' . . . . Mackbee argue[d] that the capital murder indictment was void for failure to specify overt facts committed during the course of the robbery . . . . Mackbee contend[ed] the lack of notice concerning the underlying felony render[ed] his conviction void.

*Id.* at 34-35.

¶39. This Court held that "[o]n the merits, Mackbee's argument . . . fails because the indictment further read, 'contrary to and in violation of § 97-3-19(2)(e) of the Mississippi Code of 1972' which is the statutory provision for capital murder." *Id.* at 35. Similarly, in the present case, the indictment contains the important "in violation of . . . § 97-3-19(2)(e)" language. *Id.* Furthermore, as in ***Mackbee***, since Turner failed to raise this issue at the trial level, it is barred under Miss. Code Ann. § 99-7-21(Rev. 1994), which states:

> All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases, and not afterward. The court for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended, and thereupon the trial shall proceed as if such defect had not appeared.

¶40. Not only is Turner's argument barred since he failed to raise any objection at the trial level, but it also fails on the merits.

### III. THE LOWER COURT ERRED IN DENYING TURNER'S PROPOSED LESSER INCLUDED OFFENSE INSTRUCTION.

¶41. Turner argues that the jury should have been given a lesser included offense instruction on simple murder. Turner contends, based on the testimony of Stewart as to Count I of the indictment, that the clerk was shot prior to any robbery or attempted robbery. The moment that Turner entered the store was when the shot was fired. Turner claims that whether or not an armed robbery occurred after that time is not the issue.

¶42. Similarly, Turner contends that a lesser included offense instruction of simple murder should also have been given as to Court II. Turner again relies on Stewart's testimony that before Stewart could even make his way into the store and brandish his weapon, Turner had killed Everett Curry, a non-employee pumping gas outside the store. Turner argues that it is plausible that the jury could have found that Everett Curry was not killed in furtherance of a robbery of him or the store.

¶43. The State contends that this issue is totally without merit. The State points to the fact that the trial judge

heard extensive arguments from both sides as to whether this lesser included offense instruction should be given, and he found that the record was devoid of any proof which would warrant such an instruction.

¶44. This Court in ***Ormond v. State***, 599 So. 2d 951, 960-61 (Miss. 1992), stated

> [a] lesser included offense instruction is proper only if the record supports finding an evidentiary basis for the instruction. ***Mease v. State***, 539 So.2d 1324, 1330 (Miss. 1989); ***Lee v. State***, 469 So.2d 1225, 1230 (Miss. 1985); ***Ruffin v. State***, 44 So.2d 839, 840 (Miss. 1984). Such instructions should not be indiscriminately granted, ***Mease***, 539 So.2d at 1330, nor should they be based upon pure speculation, ***Fairchild v. State***, 459 So.2d 793, 801 (Miss. 1984); ***Mease***, 539 So.2d at 1330. Under the appropriate standard:

> a lesser included offense instruction should be granted unless the trial judge - and ultimately this Court - can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

***Mease,*** 539 So.2d at 1330 (*quoting* ***Harper v. State***, 478 So.2d 1017, 1021 (Miss. 1985)).

¶45. Applying these criteria to the facts in the present case, no error was committed by the trial judge in denying the lesser included offense charge of simple murder. The facts from the record simply do not support that theory of the case. The testimony of Stewart - the same testimony Turner relies upon as the basis of his argument for the lesser included offense of simple murder instruction - clearly details how the intent and purpose of Turner in the early morning hours of December 13, 1995, was to rob a store.

¶46. This testimony from Stewart as to intent was uncontradicted by any other testimony. Therefore, taking this uncontradicted testimony as true, it was Turner's specific intent throughout the events of those early morning hours, up to and including the times of both murders, to commit armed robbery.

¶47. Furthermore, Turner's argument fails on this issue because Mississippi recognizes the "one continuous transaction rationale" in capital cases. ***West v. State***, 553 So. 2d 8 (Miss. 1989). There this Court stated:

> In ***Pickle v. State***, 345 So.2d 623 (Miss. 1977), we construed our capital murder statute and held that 'the underlying crime begins where an indictable attempt is reached . . . .' 345 So.2d at 626; *see also* ***Layne v. State***, 542 So.2d 237, 243 (Miss. 1989); ***Fisher v. State***, 481 So.2d 203, 212 (Miss. 1985); and ***Culberson v. State***, 379 So.2d 499, 503-04 (Miss. 1979) . . . . An indictment charging a killing occurring 'while engaged in the commission of' one of the enumerated felonies includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony.

***West v. State***, 553 So. 2d at 13.

¶48. Applying one continuous transaction rationale to the evidence in the present case, the actions of Turner were all related to, and motivated by his desire to rob someone in those early morning hours of December 13, 1995. Therefore, the time of death of Eddie Brooks and Everett Curry - be it before or after the money was taken - is irrelevant. It is clear that these two innocent men died during the commission of armed robberies perpetrated by Stewart and Turner. For these reasons, this issue is without merit.

## IV. THE PROSECUTOR ENGAGED IN WHOLLY IMPROPER CROSS-EXAMINATION OF SENTENCING PHASE WITNESSES SOLELY FOR THE PURPOSE OF INJECTING PREJUDICE TO INFLAME THE JURY.

¶49. Turner argues that during the sentencing phase, the State, on cross-examination of Turner's witnesses, brought up instances of Turner's conduct of which he was never convicted solely for the improper purpose of inflaming and prejudicing the jury. Specifically, according to Turner, the prosecutor sought to elicit responses from the witnesses concerning Turner's alleged beating of his mother, threats to kill his stepfather, and the contacting of local law enforcement officers in response to these alleged threats and other uncharged alleged misconduct. By failing to object to this questioning of these witnesses, Turner has waived the issue for appeal.

¶50. Nevertheless, addressing the merits of the claim, Turner placed his character into evidence in the sentencing phase of the trial. The State was entitled to ask the mitigating witnesses questions that would rebut their testimony that he was the victim of abuse, not the abuser. The State is allowed to rebut mitigating evidence through cross-examination, introduction of rebuttal evidence or by argument. *Bell v. State*, So. 2d , 1998 WL 334709, No. 93-DP0189 (Miss. June 25, 1998) slip at ¶ 97-98; *Davis v. State*, 684 So. 2d 643, 655 (Miss. 1996).

¶51. The trial judge allowed Turner to put on witnesses who testified as to what a wonderful child he was and as to how this heinous crime was everyone's fault but Turner's. In response to this, on cross-examination, the State then is allowed to bring up the not so favorable instances from Turner's past, such as his threats of abuse towards his mother and step-dad. Therefore, Turner's arguments on this issue are meritless.

## V. THE TRIAL COURT ERRED IN EXCLUDING RELEVANT MITIGATION EVIDENCE IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.

¶52. Turner argues that during the sentencing phase of the trial, the defense attempted to elicit testimony from three mitigation witnesses related to the defendant's upbringing and relationship with his mother. The prosecution objected on the grounds of hearsay, and the trial court sustained the objections. Turner claims that in light of *Green v. Georgia*, 442, U.S. 95, 97 (1979) (per curiam), the action by the trial court in sustaining the objections was erroneous.

¶53. This Court in *Ballenger v. State*, 667 So. 2d 1242, 1263 (Miss. 1995) *cert. denied*, 518 U.S. 1024 (1996), held that it was too broad an interpretation of *Green* to say merely that a state evidentiary rule cannot operate to exclude otherwise relevant mitigating evidence. This Court has held that *Green v. Georgia* does not open the door to just any type evidence in mitigation; "unique circumstances" must exist to overcome the evidentiary rule against hearsay. *Ballenger*, 667 So. 2d at 1262-63.

¶54. Turner has not pointed out what special or unique circumstances make the hearsay he wanted to introduce in mitigation admissible. He points to three instances in the sentencing phase where the trial court sustained objections to hearsay by the prosecution. These came during the testimony of Marsha Sanders Shaw, Turner's aunt, Pamela Sanders Crestwell, Turner's aunt, and Kenneth Crestwell, Turner's uncle.

¶55. Turner made no proffer as to what Mrs. Shaw would have testified to had she been allowed to answer

the question. When a trial court rules so as to prevent certain testimony from being introduced, it is incumbent on the party to make a proffer of what the witness would have testified to or the point is waived for appellate review. *Evans v. State*, So. 2d , 1997 WL 562044, No. 93-DP-1173-SCT (Miss. Sept. 11, 1997). In *Evans*, this Court stated:

> In *Gayton v. State*, 595 So. 2d 409, 413 (Miss. 1992), this Court held that the failure to seek a definitive ruling on objections or to seek corrective action by the defendant waives the issue for the purposes of appeal. *See also Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987), *cert. denied*, 488 U.S. 934 (1988), *reh'g denied*, 488 U.S. 1023 (1989); *Cummings v. State*, 465 So. 2d 993, 996 (Miss. 1985). Moreover, this Court has repeatedly held that 'when testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.' *Gates v. State*, 484 So. 2d 1002, 1008 (Miss. 1986). In *Settles v. State*, 584 So. 2d 1260, 1265 (Miss. 1991), this Court stated 'if a proffer is required in the face of an erroneous ruling, surely no less is required to preserve the issue where no ruling is made.' Evans' failure to seek a definite ruling by the trial court combined with the lack of a proffer of Giles' testimony waives this issue. This issue is without merit.

*Evans v. State*, So. 2d , 1997 WL 562044, ¶ 239, No. 93-DP-1173-SCT (Miss. Sept. 11, 1997). *See also Holland v. State*, 705 So. 2d 307, 348 ¶ 172 (Miss. 1997); *Kolberg v. State*, 704 So. 2d 1307, 1321 ¶ 67 (Miss. 1997); *Wilcher v. State*, 697 So. 2d 1087, 1093 (Miss. 1997); *Williams v. State*, 684 So. 2d 1179, 1194 (Miss. 1996). The point has not been preserved for appellate review and is therefore waived. The same is true of the other two instances cited in the record by Turner. At neither instance did Turner make a proffer of what the testimony would have shown. Therefore, both assignments of error for appellate review have been waived.[2] This issue is, therefore, without merit.

### VI. THE LOWER COURT ERRED IN LIMITING CONSIDERATION OF MENTAL CAPACITY MITIGATING CIRCUMSTANCE TO "SUBSTANTIAL IMPAIRMENT."

¶56. Turner argues that during the instruction conference at the sentencing phase, Turner offered a form of the verdict which was essentially the same as the one approved by the lower court and offered by the State with one major exception. The defense instruction told the jury that they may consider as a mitigating circumstance "whether the capacity of Mr. Turner to appreciate the criminality of his conduct or to conform conduct to the requirements of the law was impaired at the time of the offense". This instruction was refused. The State's instruction limited the consideration of this mitigator by requiring the jury to find that his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law had to be "substantially impaired". Turner alleges that the instruction as given unconstitutionally limited the jury's consideration of Turner's emotional state and psychological problems, since a rational jury could have concluded that in order for his mental state to be a mitigating factor, a threshold of "substantial impairment" would have to be crossed.

¶57. This very issue was addressed by this Court in *Berry v. State*, 703 So. 2d 269, 286-87 (Miss. 1997). There, this Court held that the "catch-all" instruction ensured that the jury was allowed to consider all the mitigating circumstances. This Court has further held that when the "catchall instruction" is given the trial court can reject instructions on specific mitigating factors that are not supported by the evidence or that are in dispute. *Lester v. State*, 692 So. 2d 755, 799 (Miss. 1997). In *Lester*, this Court held, "[a] catchall instruction is sufficient to encompass nonstatutory mitigating factors. *Lester*, 692 So. 2d at 799 (citing

*Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990); *Taylor v. State*, 672 So. 2d 1246, 1276-77 (Miss. 1996).

¶58. For these reasons, this claim is without merit.

> **VII. THE INSTRUCTIONS TO THE JURY AND THE INTRODUCTION OF THE GUILT PHASE EVIDENCE AT THE SENTENCING PHASE VIOLATED STATE LAW AND THE FEDERAL AND STATE CONSTITUTIONS.**

¶59. At the start of the sentencing phase, the State moved that all evidence from the guilt phase of the trial be adopted and considered by the jury. The defense objected to the wholesale adoption of both the guilt phase testimony and nearly two hundred exhibits. The defense objection was overruled. The jury was instructed (SS-4) at the close of the case that it could consider all evidence from the guilt phase in determining the sentence to impose. Turner contends that the admission of all guilt phase evidence at the sentencing phase allowed the jury to sentence him to death based on non-statutory aggravating circumstances.

¶60. This Court in *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), outlined the procedure for the introduction of evidence in the sentencing phase of a capital murder trial. Regarding the presentation of evidence at the sentencing phase, this Court held:

> At the sentencing hearing, the question to be decided by the jury is whether the defendant shall be sentenced to death or to life imprisonment. **At this hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment.**

*Jackson v. State*, 337 So. 2d at 1256 (emphasis added). *See also Evans v. State*, So. 2d , 1997 WL 562044, No. 93-DP-1173-SCT, ¶ 395-97 (Miss. Sept. 11, 1997); *Holland v. State*, 705 So. 2d 307, 350 (Miss. 1997); *Williams v. State*, 684 So. 2d 1179, 1207 (Miss. 1996); *Davis v. State*, 660 So. 2d 1228, 1253-54 (Miss. 1995); *Mack v. State*, 650 So. 2d 1289, 1323-24 (Miss. 1994); *Foster v. State*, 639 So. 2d 1263, 1301 (Miss. 1994); *Wilcher v. State*, 448 So. 2d 584, 585 (Miss. 1980). Further, this Court has held that it is "preferable" for the State to move for the reintroduction of the evidence produced at the guilt phase at the beginning of the sentencing phase. *Mack v. State*, 650 So. 2d 1289, 1323-24 (Miss. 1994). However, failure to move for this reintroduction is not fatal error. *Id.* For these reasons, Turner's claim here is without merit.

> **VIII. THE LOWER COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THERE IS A PRESUMPTION THAT NO AGGRAVATING CIRCUMSTANCES EXIST.**

¶61. Sentencing instruction number one contains the language in the initial paragraph that in reaching their decision, the jury "may objectively consider the detailed circumstances of the offense for which the defendant was convicted. . . ." Turner alleges that by instructing the jury that it can consider the 'detailed circumstances of the offense for which the defendant was convicted' allows the jury to venture outside the boundaries of aggravating and mitigating circumstances.

¶62. As in *Davis v. State*, 660 So. 2d 1228 (Miss. 1995), a thorough reading of the entire jury instruction cures the alleged error. Sentencing instruction one states in relevant part:

Consider only the following elements of aggravation in determining whether the death penalty should be imposed:

1. The capital offense was committed for pecuniary gain during the course of an armed robbery.

You must unanimously find, beyond a reasonable doubt, that the preceding aggravating circumstance exists in this case to return the death penalty. If the aggravating circumstance is found not to exist, the death penalty may not be imposed. . . .

¶63. This instruction unmistakably informs the jury that this particular aggravating circumstance must be found, beyond a reasonable doubt, in order to impose the death penalty.

¶64. Further, in *Herrera v. Collins*, 506 U.S. 390 (1993), the United States Supreme Court held:

Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. Cf. *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974)("The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt"). Here, it is not disputed that the State met its burden of proving at trial that petitioner was guilty of the capital murder of Officer Carrisalez beyond a reasonable doubt. Thus, in the eyes of the law, petitioner does not come before the Court as one who is 'innocent,' but, on the [506 U.S. 400] contrary, as one who has been convicted by due process of law of two brutal murders.

¶65. For these reasons, this issue is without merit.

### IX. THE LOWER COURT ERRED IN INSTRUCTING THE JURY AT SENTENCING IT COULD CONSIDER "THE DETAILED CIRCUMSTANCES OF THE OFFENSE."

¶66. Sentencing instruction number one contains the language in the initial paragraph that in reaching their decision, the jury may objectively consider the detailed circumstances of the offense for which the defendant was convicted. Turner argues that instructing the jury that it can consider the "detailed circumstances of the offense for which the defendant was convicted" allows the jury to venture outside the boundaries of aggravating and mitigating circumstances.

¶67. On the contrary, the use of the language "you may objectively consider the detailed circumstances of the offense for which the defendant was convicted" in the sentencing instruction is not error, but is recognized by this Court as a proper instruction. *Doss v. State*, So. 2d , 1996 WL 272348, No. 93-DP0509-SCT (Miss. May 23, 1996), slip at 51-53; *Carr v. State*, 655 So. 2d 824, 856-57 (Miss. 1995), *cert. denied*, 516 U.S. 1076 (1996); *Foster v. State*, 639 So. 2d 1263, 1301 (Miss. 1994), *cert. denied* 514 U.S. 1019, *reh'g denied*, 514 U.S. 1123 (1995); *Evans v. State*, 422 So.2d 737, 742 (Miss. 1982). *See Tuilaepa v. California*, 512 U.S. 967, 979 (1994)(circumstances of a particular offense [are] constitutionally indispensable parts of the process of inflicting the penalty of death); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976); *United States v. Flores*, 63 F.3d 1342, 1372 (5th Cir. 1995).

¶68. This claim is without merit.

## X. THE LOWER COURT VIOLATED THE EIGHTH AMENDMENT AND STATE LAW BY INSTRUCTING THE JURY TO DISREGARD SYMPATHY IN REACHING ITS SENTENCING DECISION.

¶69. Sentencing instruction number one, contained the following sentence: "You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling." Turner argues that this instruction violated state law in that it limited the jury's consideration of mitigation evidence, which in turn violated the Eighth and Fourteenth Amendments to the United States Constitution.

¶70. This Court on numerous occasions has held that a capital defendant is not entitled to a sympathy instruction. Like a mercy instruction, it results in a verdict based on "whim and caprice." *Holland v. State*, 705 So. 2d 307, 351-52 (Miss. 1997); *Lester v. State*, 692 So. 2d 755, 798 (Miss. 1997); *Jackson v. State*, 684 So. 2d 1213, 1239 (Miss. 1996); *Walker v. State*, 671 So. 2d 581, 612-13 (Miss. 1995); *Ballenger v. State*, 667 So. 2d 1242, 1264-65 (Miss. 1995); *Mack v. State*, 650 So. 2d 1289, 1330-31 (Miss. 1994); *Willie v. State*, 585 So. 2d 660, 677 (Miss. 1991); *Ladner v. State*, 584 So. 2d 743, 759-62 (Miss. 1991). *See Johnson v. Texas*, 509 U.S. 350, 362 (1993); *Saffle v. Parks*, 494 U.S. 484 (1990); *Jenkins v. State*, 607 So. 2d 1171, 1181 (Miss. 1992). The words "pity" and "mercy" are synonyms to "sympathy." *Jackson v. State*, 684 So. 2d 1213, 1239 (Miss. 1996). An instruction that informs the jury "not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling," is proper and not objectionable. *Evans v. State*, So. 2d , 1997 WL 562044, ¶ 357, No. 93-DP-1173-SCT (Miss. Sept. 11, 1997), slip at 137-39; *Holland v. State*, 705 So. 2d 307, 351-52 (Miss. 1997); *Blue v. State*, 674 So. 2d 1184, 1224-25 (Miss. 1996); *Willie v. State*, 585 So. 2d 660, 667 (Miss. 1991). This claim is, therefore, without merit.

## XI. THE EIGHTH AMENDMENT AND STATE LAW WERE VIOLATED WHEN THE LOWER COURT ALLOWED IN ESSENCE BOTH THE ROBBERY AND PECUNIARY GAIN AGGRAVATING CIRCUMSTANCES TO BE CONSIDERED BY THE JURY.

¶71. In sentencing instruction number one, only one aggravating factor was offered for the jury's consideration:

1. The capital offense was committed for pecuniary gain during the course of an armed robbery.

Turner contends that under *Willie v. State*, 585 So. 2d 660, 680-81 (Miss. 1991), this Court will not allow the jury "the opportunity to doubly weigh the commission of the underlying felony and the motive behind the underlying felony as separate aggravators." Turner alleges that in the present case sentencing instruction number one violated the spirit, if not the exact letter of the law.

¶72. In *Jenkins v. State*, 607 So. 2d 1171, 1182 (Miss. 1992), this Court held, "in *Willie*, we clearly rejected the use of robbery and pecuniary gain aggravators finding that they were, in essence, just one." *See also Ladner v. State*, 584 So. 2d 743, 762 (Miss. 1991); *Willie v. State*, 585 So. 2d 660, 680-81 (Miss. 1991). For these reasons, this issue is without merit.

**XII. THE STATE'S MISCONDUCT IN THE CLOSING ARGUMENT WARRANTS REVERSAL OF THE DEATH SENTENCE.**

¶73. During the prosecutor's closing argument at the sentencing phase, his last comment to the jury was as follows:

> And I ask that that (sic) is what you do and that you return into court and tell this defendant through your sentence that he is going to have to suffer death just like the two people that he killed and didn't give an opportunity to come to court.

¶74. This comment was objected to by Turner, and the objection was overruled. Turner argues that this remark violates the Fourteenth Amendment requirement for due process and a fair trial.

¶75. This Court has held that where the comment is "isolated" and"no other portion of the closing argument focused on the exercise of constitutional rights by the defendant, the comment [does] not warrant a reversal of the jury's verdict." *See* *Wells v. State*, 698 So.2d 497, 511 (Miss. 1997); *Davis v. State*, 684 So.2d 643, 654-55 (Miss. 1996). Therefore, this issue is without merit.

**XIII. THE STATE IMPROPERLY ARGUED STATUTORY AGGRAVATING CIRCUMSTANCE WHEN IT HAD PREVIOUSLY ON THE RECORD ELECTED TO ONLY PROCEED ON THE PECUNIARY GAIN AGGRAVATOR AND HAD NOT SOUGHT TO PROCEED WITH THE HEINOUS, ATTROCIOUS AND CRUEL AGGRAVATOR IN THE SENTENCING INSTRUCTION.**

¶76. Turner argues that early in the pre-trial proceedings, the State elected to pursue only the aggravating circumstance that the capital offense was committed for pecuniary gain during the course of an armed robbery. The sentencing instruction adopted by the trial court only listed the pecuniary gain aggravator. Turner alleges that, notwithstanding the State's singular election, the closing argument is inundated with references to other aggravating circumstances outside the parameters of the pecuniary gain argument. Turner opines that these comments made by the prosecutor during his closing argument during the sentencing stage had no connection whatsoever to the pecuniary gain aggravator submitted to the jury in the sentencing instruction.

¶77. The State, in its closing argument during the sentencing phase did refer to the gruesome nature of the killings. However, Turner made no objection to the State's argument during the first two instances. Where there is no contemporaneous objection made to closing arguments at trial, the issue cannot be raised for the first time on appeal. *Mack v. State*, 650 So.2d 829 (Miss. 1994); *Chase v. State*, 645 So.2d 829 (Miss. 1994); *Foster v. State*, 639 So.2d 1263 (Miss. 1994); *Cole v. State*, 525 So.2d 365 (Miss. 1987), *cert. denied*, 488 U.S. 934 (1988), *reh'g denied*, 488 U.S. 1023 (1989).

¶78. Following the third reference to the gruesomeness of the crime Turner raised an objection which the trial court overruled. The State argues that their comments were not objectionable. Gruesome was an apt and proper description of the circumstances of these slayings. This Court has held that the State can present the detailed circumstances of the murder committed by the defendant during the sentencing phase or during a resentencing phase even though the facts of the crime do not support one of the aggravating factors. *Holland v. State*, 705 So. 2d 307, 327

**(Miss. 1997)**; *Russell v. State*, 670 So. 2d 816, 832-35, 837-38 (Miss. 1995). *See Emmund v. Florida*, 458 U.S. 782 (1982). Thus, the State was entitled to argue these facts and draw inferences from the facts in order to prove that Turner actually killed, attempted to kill, intended the killing take place or that deadly force was contemplated. Miss. Code Ann. § 99-19-101(7) (Supp.1994).

¶79. In any event the jury was instructed on only one aggravating circumstance in this case. That factor was that the murders were committed while the defendant committed the capital offenses for pecuniary gain during the commission of armed robbery. The jury had no way under the instructions to base their sentence of death on any argument that the crime was "especially heinous" as it was not listed as an aggravating factor. There was no error, therefore, in overruling Turner's motion. This issue without merit.

## PROPORTIONALITY REVIEW

¶80. Mississippi Code Annotated § 99-19-105(3) requires that a proportionality review be conducted by this Court when affirming a death sentence in a capital case. Section 99-19-105(3) (Supp. 1998) states:

> (3) With regard to the sentence, the court shall determine:
>
> (a) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; (b) whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; (c) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and (d) should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.

(emphasis added).

¶81. It does not appear that Turner's death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. Neither does it appear, upon comparison to other factually similar cases where the death sentence was imposed, that the sentence of death is disproportionate in this case.

¶82. Having given individualized consideration to Turner and the crimes in the present case, this Court concludes that there is nothing about Turner or his crimes that would make the death penalty excessive or disproportionate in this case. *See Blue v. State*, 674 So. 2d 1184, 1234-35 (Miss. 1996) (death sentence proportionate where defendant abused drugs and alcohol at an early age, came from dysfunctional family, and had no positive role models at home); *Foster v. State*, 639 So. 2d 1263, 1304 (Miss. 1994) (death sentence proportionate where defendant was mentally impaired); *Lanier v. State*, 533 So. 2d 473, 492 (Miss. 1988) (death sentence was proportionate where defendant had been institutionalized twice for alcoholism and drug abuse); *Neal v. State*, 451 So. 2d 743, 761 (Miss. 1984) (death sentence affirmed where defendant had

been institutionalized at young age, had learning and family difficulties, and was not loved or supervised at home); *Evans v. State*, 422 So. 2d 737, 739 (Miss. 1982) (death sentence was proportionate where defendant robbed and shot victim); *Doss v. State*, 709 So. 2d 369 (Miss. 1997) (death sentence was proportionate where defendant robbed and shot victim).

## CONCLUSION

¶83. For these reasons, this Court affirms Turner's two convictions for capital murder and his two sentences of death and a new date for the execution of the sentence of death will be set according to the dictates of Miss. Code Ann. § 99-19-105(7)(Supp. 1998).

¶84. CONVICTION OF CAPITAL MURDER (TWO COUNTS) AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (SUPP.1998) AND M.R.A.P. 41 (a).

PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.

## APPENDIX

### DEATH CASES AFFIRMED BY THIS COURT

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1123 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* **684 So. 2d 1179 (Miss. 1996).**

*Davis v. State,* **684 So. 2d 643 (Miss. 1996).**

*Taylor v. State*, **682 So. 2d. 359 (Miss. 1996).**

*Brown v. State*, **682 So. 2d 340 (Miss. 1996).**

*Blue v. State*, **674 So. 2d 1184 (Miss. 1996).**

*Holly v. State*, **671 So. 2d 32 (Miss. 1996).**

*Walker v. State*, **671 So. 2d 581(Miss. 1995).**

*Russell v. State*, **670 So. 2d 816 (Miss. 1995).**

*Ballenger v. State*, **667 So. 2d 1242 (Miss. 1995).**

*Davis v. State*, **660 So. 2d 1228 (Miss. 1995).**

*Carr v. State*, **655 So. 2d 824 (Miss. 1995).**

*Mack v. State*, **650 So. 2d 1289 (Miss. 1994).**

*Chase v. State*, **645 So. 2d 829 (Miss. 1994).**

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Foster v. State*, **639 So. 2d 1263 (Miss. 1994).**

*Conner v. State*, **632 So. 2d 1239 (Miss. 1993).**

*Hansen v. State*, **592 So. 2d 114 (Miss. 1991).**

***Shell v. State*, 554 So. 2d 887 (Miss. 1989),** *Shell v. Mississippi*, **498 U.S. 1 (1990) reversing, in part, and remanding,** *Shell v. State*, **595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.**

*Davis v. State*, **551 So. 2d 165 (Miss. 1989).**

*Minnick v. State*, **551 So. 2d 77 (Miss. 1989).**

***Pinkney v. State*, 538 So. 2d 329 (Miss. 1989),** *Pinkney v. Mississippi*, **494 U.S. 1075 (1990) vacating and remanding** *Pinkney v. State*, **602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.**

***Clemons v. State*, 535 So. 2d 1354 (Miss. 1988),** *Clemons v. Mississippi*, **494 U.S. 738 (1990) vacating and remanding,** *Clemons v. State*, **593 So. 2d 1004 (Miss. 1992) remanding for new**

**sentencing hearing.**

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

**\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.**

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court,case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

## AND SENTENCE PHASE

*Kolberg v. State,* **704 So. 2d 1307 (Miss. 1997).**

*Snelson v. State,* **704 So. 2d 452 (Miss. 1997).**

*Fusilier v. State*, **702 So. 2d 388 (Miss. 1997).**

*Howard v. State,* **701 So. 2d 274 (Miss. 1997).**

*Lester v. State,* **692 So. 2d 755 (Miss. 1997).**

*Hunter v. State*, **684 So. 2d 625 (Miss. 1996).**

*Lanier v. State*, **684 So. 2d 93 (Miss. 1996).**

*Giles v. State,* **650 So. 2d 846 (Miss. 1995).**

*Duplantis v. State*, **644 So. 2d 1235 (Miss. 1994).**

*Harrison v. State*, **635 So. 2d 894 (Miss. 1994).**

*Butler v. State*, **608 So. 2d 314 (Miss. 1992).**

*Jenkins v. State*, **607 So. 2d 1171 (Miss. 1992).**

*Abram v. State*, **606 So. 2d 1015 (Miss. 1992).**

*Balfour v. State*, **598 So. 2d 731 (Miss. 1992).**

*Griffin v. State*, **557 So. 2d 542 (Miss. 1990).**

*Bevill v. State*, **556 So. 2d 699 (Miss. 1990).**

*West v. State*, **553 So. 2d 8 (Miss. 1989).**

*Leatherwood v. State*, **548 So. 2d 389 (Miss. 1989).**

*Mease v. State*, **539 So. 2d 1324 (Miss. 1989).**

*Houston v. State*, **531 So. 2d 598 (Miss. 1988).**

*West v. State*, **519 So. 2d 418 (Miss. 1988).**

*Davis v. State*, **512 So. 2d 129l (Miss. 1987).**

*Williamson v. State*, **512 So. 2d 868 (Miss. 1987).**

*Foster v. State*, **508 So. 2d 1111 (Miss. 1987).**

## DEATH CASES REVERSED AS TO GUILT PHASE

## AND SENTENCE PHASE

### (continued)

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).


## DEATH CASES REVERSED

## AS TO PUNISHMENT AND REMANDED

## FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO

# PUNISHMENT AND REMANDED FOR A NEW TRIAL

# <u>ON SENTENCING PHASE ONLY</u>

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (Miss. 1996)

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

1. The order denying Turner's motion for new trial is dated July 10, 1997. However, the motion was orally denied on March 25, 1997, at the conclusion of the hearing on the motion for new trial.

2. It is interesting to note that the first two assignments of error dealt with hearsay testimony where the defense was trying to elicit what Turner's mother had said to Turner. Turner's mother was present at trial, but did not testify in her son's behalf. Had this testimony been so crucial, the witness in the best position to testify to the conversation was the mother. However, for whatever reason, Turner chose not to call his mother. Similarly, the third assignment of error dealt with what he had said to Pam Crestwell. Instead of asking Pam Crestwell what Turner had told her, the defense asked her husband what Turner had told Pam. Had Turner desired for the jury to hear what he told Pam, he should have asked Pam, who had just finished testifying right before her husband.